BOARD OF TRANSPORTATION v. ELLA MAE INGRAM JONES

No. 110

(Filed 12 June 1979)

1. **Eminent Domain §§ 6.3, 13.5— determining value—damages to remainder— real estate appraiser's opinion—jury instruction on before and after value**

    G.S. 136-112 speaks only to the exclusive measure of damages to be employed by the commissioners, jury or judge in a condemnation proceeding and in no way attempts to restrict expert real estate appraisers to any particular method of determining the fair market value of property either before or after condemnation; therefore, it was not error for the trial court to permit defendant's witness to testify that he derived defendant's damages by application of the "value of the part taken plus damages to the remainder" formula, since the court instructed the jury only on the before and after value method to compute defendant's damages and did not repeat in its charge any of the individual damages that were testified to.

2. **Eminent Domain §§ 6.8, 13.5— general benefits—failure to instruct—no error**

    In a condemnation proceeding to secure property for the building of a highway, the trial court did not err in failing to instruct the jury on general benefits even though it did charge on special benefits.

3. **Eminent Domain § 13.5— general and special benefits—failure to request further jury instructions**

    Plaintiff in a condemnation proceeding could not complain that the trial court failed adequately to define general and special benefits where plaintiff failed to request further instruction.

    Justice BROCK did not participate in the consideration or decision of this case.

ON petition for discretionary review of the decision of the Court of Appeals, 38 N.C. App. 337, 248 S.E. 2d 108 (1978) (*Brock, C.J.* (now Justice), concurred in by *Clark* and *Martin (Harry), JJ*), which reversed the judgment of *Herring, J.*, entered in the 25 July 1977 Session of WAKE County Superior Court.

This is a condemnation proceeding instituted by plaintiff, the North Carolina Board of Transportation, against certain property belonging to defendant, Ella Mae Ingram Jones. The taking was for the purpose of constructing a segment of the Raleigh Beltline from U.S. Highway 64 to Poole Road, just east of the city of Raleigh in Wake County.

Before the appropriation the defendant owned land consisting of 166.43 acres, 9.86 acres of which were south of Poole Road with the remainder lying north of Poole Road. Plaintiff condemned 29.48 acres in fee and .37 acre as easements. The condemned portion ran approximately through the center of defendant's land. After the taking, defendant's retained land was divided into three separate parts: 61.26 acres on the west side of the projected Beltline, 70.93 acres on the east side of the projected Beltline north of Poole Road and 4.39 acres on the east side of the projected Beltline south of Poole Road.

The parties stipulated before trial that the only issue to be decided was the amount of compensation to be paid defendant because of the appropriation of a portion of her property. Both the defendant and the plaintiff offered value witnesses who gave figures ranging from $500,000 to $98,105 as the difference between the fair market value of defendant's property before the taking and the fair market value of defendant's remaining property after the taking. The jury awarded the defendant $250,000, and the plaintiff appealed. The Court of Appeals reversed, granting plaintiff a new trial, and this Court granted defendant's petition for discretionary review.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Robert W. Newsom III for the plaintiff.*

*Johnson, Gamble and Shearon by Richard O. Gamble for the defendant.*

COPELAND, Justice.

For the reasons stated below, we reverse the decision of the Court of Appeals.

[1] The Court of Appeals first held that plaintiff was entitled to a new trial because of the trial court's failure to strike the

testimony of one of defendant's expert witnesses. We do not agree.

Mr. W. R. Rand was a witness for the defendant at trial. After being found by the court to be an expert in the field of real estate appraisal, he testified that his estimate of the fair market value of defendant's entire property, including improvements thereon, prior to the taking was $755,737. The witness then testified that in his opinion the fair market value of defendant's remaining property after the taking was $444,847.

As Mr. Rand began explaining the bases for his estimates, it became apparent that he arrived at his valuation of the property after the appropriation by assessing and totalling all the damages he felt were caused by the condemnation, which in this case he estimated to be $310,890, and then subtracting that amount from his original appraisal of the value of the entire property before the taking. The plaintiff moved to strike the expert's testimony on the ground that his method of valuation was in conflict with G.S. 136-112(1). Its motion was denied.

G.S. 136-112 states in pertinent part:

"The following shall be the measure of damages to be followed *by the commissioners, jury or judge* who determines the issue of damages:

(1) Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes." (Emphasis added.)

It is important to note that the statute speaks only to the exclusive measure of damages to be employed by the "commissioners, jury or judge." It in no way attempts to restrict *expert real estate appraisers* to any particular method of determining the fair market value of property either before or after condemnation. *See generally State Highway Commission v. Conrad*, 263 N.C. 394, 139 S.E. 2d 553 (1965) (expert witnesses given wide latitude regarding permissible bases for opinions on value).

"Three *alternative* formulas are recognized for measuring just compensation in partial-taking cases: (i) The *value of the part taken* rule; (ii) *Value of the part taken plus damages to the remainder* rule; and, (iii) The *before and after value* rule. . . . The distinction between the second and third formulas is narrow, but the important point here is that they are alternatives. Therefore, it would be inappropriate to instruct the jury as to both formulas. . . . This does not mean that evidence of the value of the lands taken plus damages to the remainder is not admissible. In fact, it is appropriately considered by appraisers as two of the many guides for determining 'before and after values.' For example, all the appraisers in this case followed that procedure." *Young v. Arkansas State Highway Commission*, 242 Ark. 812, 814-15, 415 S.W. 2d 575, 577 (1967). (Emphasis in original.)

Therefore, if there is a jury trial on the issue of compensation in a partial taking case, such as in this one, the trial court is required to instruct the jury *only* on the before and after value rule set fort in G.S. 136-112(1). If he were to *instruct* on that method and *also* on the value of the part taken plus damages to the remainder theory, the jury may be misled into believing that "after they had determined the 'before and after' value they could also take the diminution in the value of the remainder into consideration." *Mississippi State Highway Commission v. Hall*, 252 Miss. 863, 874, 174 So. 2d 488, 492 (1965). *See also Wheeler v. State Highway Commission*, 212 Miss. 606, 55 So. 2d 225 (1951). This erroneous process would result in double compensation for some damages. This Court has noted that evidence regarding the adverse effects of the condemnation on the remaining property is admissible, but such effects "are not separate items of damages, recoverable as such, but are relevant only as circumstances tending to show a diminution in the over-all fair market value of the property." *Gallimore v. State Highway and Public Works Commission*, 241 N.C. 350, 355, 85 S.E. 2d 392, 396 (1955).

Mr. Rand in this case guaged his appraisals of defendant's property in terms of the fair market value of the property before and after the taking. He then explained how he arrived at his estimates, which he was entitled to do. The fact that he used a particular method, value of the part taken plus damages to the remainder, to arrive at his estimate of the fair market value of the

property after the taking did not render his testimony incompetent. The trial court instructed the jury only on the before and after value method to compute defendant's damages. The court did not repeat in its charge any of the individual damages that were testified to, thus making it very unlikely the defendant was overcompensated by the jury's award. *See Mississippi State Highway Commission v. Hall, supra.* Plaintiff's motion to strike Mr. Rand's testimony was correctly denied.

[2] The Court of Appeals also held that the trial court erred in not instructing the jury on general benefits, even though it did charge on special benefits.

"[S]pecial benefits are those which arise from the peculiar relation of the land in question to the public improvement. . . . [G]eneral benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment." *Templeton v. State Highway Commission,* 254 N.C. 337, 341, 118 S.E. 2d 918, 922 (1961). (Citation omitted.) Plaintiff claims the following testimony by one of its witnesses constituted evidence of general benefits:

> "I determined that the land lying east of the Beltline had been enhanced due to the easy access to other areas of Wake County, and it's my opinion that this would escalate the development of that property and decrease the time necessary to develop it. I placed a value of $3,750.00 per acre on the tract of land lying east of the Beltline after the taking, which is an increase of $500 per acre.
>
> I included everything east of the road in that category. The land valued at $3,750.00 an acre afterwards includes the 4.39 acres lying to the south side of Poole."

From an examination of the above testimony, it is clear that the witness was referring only to the *defendant's* land. His reference to "everything east of the road" meant that he felt *both* of defendant's tracts lying east of the projected Beltline were included in his estimate of enhanced property value due to the construction of the highway.

It is true that the type of benefit to which the witness was testifying — easy access to other areas of Wake County — would

*normally* be enjoyed by other landowners in the area. Yet this does not appear to be necessarily so. For example, other property may have no reasonable access to the proposed highway. The only evidence in the record that even refers to other property in the area came from Mr. Rand, defendant's witness, who stated that "[t]here wasn't anything within 15-20 miles of that piece that was comparable to it, not with that road coming to it."

The burden of proving general and special benefits was on the plaintiff in this action, and we have stated that the trial court should not charge on such if their existence is merely speculative or uncertain. *Kirkman v. State Highway Commission*, 257 N.C. 428, 126 S.E. 2d 107 (1962). The trial court did not err in this case by not instructing the jury on general benefits.

[3] The plaintiff contends the trial court erred in its instructions to the jury on benefits in that it failed to adequately define that concept or to distinguish between general and special benefits. This Court has said that "[t]he failure to define more fully the meaning of general or special benefits or to distinguish between them, in the absence of timely request, may not be held for error." *Simmons v. North Carolina State Highway & Public Works Commission*, 238 N.C. 532, 535, 78 S.E. 2d 308, 311 (1953). Plaintiff made no such request; this assignment of error is without merit.

For the reasons stated above, the trial court is affirmed and the decision of the Court of Appeals is

Reversed.

Justice BROCK did not participate in the consideration or decision of this case.