DUKE POWER COMPANY v. MOM 'N' POPS HAM HOUSE, INC.; JOHN W. ERVIN, JR., TRUSTEE FOR NORTHWESTERN BANK; AND NORTHWESTERN BANK

No. 7825SC1146

(Filed 16 October 1979)

1. **Eminent Domain § 5.6— plans for future use—motion in limine**

    In an action to condemn a power line easement, the trial court did not abuse its discretion in the denial of petitioner's motion *in limine* to prohibit the landowner from introducing evidence that it had plans for future expansion of its office and warehouse building which would be precluded by the imposition of petitioner's easement where the court stated that it would rule on such evidence at the trial, and no impermissible evidence of future plans was heard by the jury.

2. **Eminent Domain § 6.5— condemnation of easement—opinion testimony as to damages—failure to include elements which remain constant**

    In an action to condemn a power line easement in which the evidence showed that respondent's damages resulted from the value of the land actually taken and severance of an office building in the southwest corner of the tract from the remainder of the tract, and it was undisputed that a smokehouse in the northeast corner of the tract will not be affected by the easement, the trial court erred in refusing to permit petitioner's expert appraisers to give opinion testimony as to damages to the lower part of the tract without including in their computations the value of the land and smokehouse in the northeast portion of the tract.

3. **Eminent Domain § 13.5— condemnation of easement—instructions on use of condemned land by landowner**

    In an action to condemn a power line easement, the trial court erred in instructing the jury that "the landowner is limited in the use of the property to parking, crossing, raising of crops and the land cannot be used for building," since the court should have instructed only that the landowner retained the right to use the condemned land for all lawful purposes not inconsistent with the rights acquired by the petitioner.

APPEAL by the petitioner from *Graham, Judge*. Judgment entered 22 September 1978 in Superior Court, CATAWBA County. Heard in the Court of Appeals on 19 September 1979.

Duke Power Company seeks to impose an easement over lands owned by Mom 'n' Pops Ham House, Inc. (respondent). The property of the respondent is divided in a north-south direction by Spring Street and terminates at a right of way belonging to Southern Railway which traverses the property along the south-

Power Co. v. Ham House, Inc.

ern boundary. The railroad right of way extends 100 feet from the center line of its track.

Two buildings are located on the respondent's property: a smokehouse (ham curing facility) east of Spring Street, and the home office and warehouse located on the west side of Spring Street.

The easement imposed by the petitioner extends in an east-west direction along a creek bed south of the smokehouse, and north of the main office building and warehouse, and is 68 feet in width east of Spring Street and 81 feet in width west of it.

The parties stipulated that the property was encumbered by deeds of trust to Northwestern Bank and the proceeds of any recovery would be paid to the bank. Parties further stipulated that a commissioners hearing would be waived and that the petitioner had the right to condemn the easement. Hence, the proceeding was docketed in the superior court on the issue of damages alone.

Prior to the trial, the petitioner filed a motion *in limine* stating, among other things, that it believed that the respondent, Mom 'n' Pops, intended to offer to the jury evidence of its plans for future uses and development of the subject property and asking that evidence not be admitted; that any tender of evidence be made outside the presence of the jury. After argument of counsel to the court, the judge stated that he would rule on the matter as the evidence came out in the case.

At trial, respondents' evidence demonstrated that damages resulted principally (1) from the severance by the power line of the home office and the lands on which the same was located from the remainder of the tract, and (2) damages to the land within the actual right of way.

The parties stipulated that three witnesses tendered by the petitioner were experts. Only one was permitted to testify as to damages.

Jerry Hewitt testified that he was familiar with the property and land values in the area; that he had formed an opinion as to the fair market value of the total land area and the buildings on the southwest corner of the tract before and after the taking.

However, he had not at the time of his original appraisal attempted to place any value on the smokehouse building on the northeast corner of the property. Hewitt felt, as had the witnesses for the respondents, that it was not in any manner affected by the taking. Hewitt then offered to testify that a value of $430,000 put on the building by one of the respondents' witnesses was a fair one—based on his knowledge of the smokehouse building from inspection of the exterior and the square footage thereof and a knowledge of commercial property in the Claremont area. In the absence of the jury, the witness testified that he did not appraise the entire property before the taking, nor did he after the taking. The court ruled that the witness was incompetent to give an opinion regarding the value of the entire tract.

Ralph Warlick testified that he was familiar with the property in question—its characteristics and construction, and of property values in the area. Warlick had seen the interior of the smokehouse when only 40% complete, but not since total completion. The court refused his offer to give an opinion as to the "before" and "after" values of the land and the smokehouse when 100% complete.

*Patrick, Harper & Dixon, by Stephen M. Thomas and William I. Ward, Jr., for petitioner appellant.*

*Simpson, Baker & Aycock, by Samuel E. Aycock and Dan R. Simpson, for respondent appellees.*

HILL, Judge.

Three questions are presented for review by this Court as follows:

[1]  1. Did the trial court's rulings on the petitioner's motion *in limine* and the respondents' offer of evidence allow the jury improperly to consider possible specific further uses of the respondents' property in reaching its verdict?

In condemnation proceedings, the determinative question is: In its condition on the day of taking, what was the value of the land for the highest and best use to which it would be put by owners possessed of prudence, wisdom and adequate means? The owner's actual plans or hopes for the future are completely irrelevant. Such aspirations are regarded as too remote and speculative

to merit consideration. *State v. Johnson*, 282 N.C. 1, 191 S.E. 2d 641 (1972); *State Highway Commission v. Conrad*, 263 N.C. 394, 139 S.E. 2d 553 (1965); *Wadsworth Land Co. v. Piedmont Traction Co.*, 162 N.C. 503, 78 S.E. 299 (1913). The respondents in this cause wanted to introduce testimony that they had future plans for the expansion of their office and warehouse building to the north and that northward was the only direction in which they could expand the building, and further, that the imposition of the petitioner's easement had precluded that expansion. Petitioner had filed its motion *in limine* in an effort to keep this evidence from being put before the jury directly or indirectly. The trial judge was not in error in denying petitioner's motion *in limine*. Granting of the motion is discretionary with the trial judge. The judge did not abuse his discretion, and as is apparent from the record, no impermissible evidence of future plans was heard by the jury.

[2]   2. Did the trial court improperly exclude the value testimony of the petitioner's expert witnesses?

> Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking . . . .

> G.S. 136-112(1).

The judge is required to instruct the jury to use the above standard—and that standard only—in computing damages. *Board of Transportation v. Jones*, 297 N.C. 436, 255 S.E. 2d 185 (1979).

However, the real issue is whether expert real estate appraisers must use the before and after formula in determining damages. They do not. Duke Power's easement is situated so that the damage to respondents' land will result from two things. Respondents will suffer loss to the extent of the value of land actually taken. In addition, the easement will isolate the warehouse in the southwest corner of the lot between Southern Railway and Duke Power easements. The northeast corner upon which the smokehouse sits will not be affected.

Petitioner's experts should have been permitted to testify from first-hand knowledge as to their opinion of the damage to

the lower part of the tract. Such testimony was allowed in *Clancy v. State*, 185 A. 2d 261, 104 N.H. 314 (1962).

In *Clancy*, several utility company easements had been taken on the rear part of plaintiff's property. The easements covered three of the total nine acres and came within 35 feet of plaintiff's buildings which were located on the front part of plaintiff's lot. Plaintiff's expert stated that the value of the existing buildings was not affected by the easement. The expert came to his figure by estimating the value of the remainder of the tract of land before the taking and after the taking.

The New Hampshire Court instructed the jury to arrive at a figure for damages by determining the difference,

'between the fair value of [the plaintiff's] whole property' before the taking, and 'the fair value of what was left' after the taking. *Clancy*, at p. 263.

It should be noted that this is the same measure used by juries in North Carolina.

The judge in *Clancy* continued to say,

The value of the buildings remaining constant, the difference between the value of the whole property before and after the taking would necessarily be the same, whether the value of the buildings was omitted from both figures used in computing the difference, or was included in both.

Here, there is no dispute that the value of the smokehouse in the northeast corner is not affected by the easement. Just as in *Clancy*, the value of that building remains constant. The value of the smokehouse could be one dollar or one million dollars. What is important is the loss to the "before taking" value of the land. This can be determined by adding the value of the land actually taken to the loss in value of the warehouse because of its isolation. This sum can be subtracted from any "before taking" value that may be pulled out of the air to arrive at respondents' damage.

It is clear that a judge must instruct the jury to base its verdict on the difference between the value of land before the taking and afterwards. However, expert real estate appraisers should be given latitude in determining the value of property.

It is important to note that the statute (G.S. 136-112) speaks only to the exclusive measure of damages to be employed by the 'commissioners, jury or judge.' It in no way attempts to restrict *expert real estate appraisers* to any particular method of determining the fair market value of property either before or after condemnation. *Board of Transportation v. Jones*, 297 N.C. 436, 438, 255 S.E. 2d 185, 187 (1979).

In situations where elements of the property, such as the smokehouse here, will remain constant in value despite the taking, expert appraisers will not have to include that value in their computations in order for their testimony to be competent.

[3] 3. Did the trial court err in failing to properly instruct the jury as to the meaning of the term "easement" and the rights of the respondents in the areas covered by the Duke Power easement?

The court correctly charged the jury that the landowner had the right "to make use of the land condemned in any manner which does not conflict with the rights of Duke Power Company."

The court then limited its definition of an easement by saying, "In this case, the landowner is limited in the use of the property to parking, crossing, raising of crops and the land cannot be used for building."

The court should not have elaborated on its definition of an easement. By limiting the definition, the court may have confused the jury and given them an improper view of the landowner's rights to the encumbered land. The jury should have been told simply that the landowner retained the right to use the land for all lawful purposes not inconsistent with the rights acquired by the petitioner. *North Asheboro Sanitary District v. Canoy*, 252 N.C. 749, 114 S.E. 2d 577 (1960); *Carolina Power & Light Co. v. Bowman*, 229 N.C. 682, 51 S.E. 2d 191 (1949). An almost infinite number of uses other than those mentioned by the presiding judge can be established.

Hence, for the reasons set out above, the petitioner is awarded a new trial.

New trial.

Judges VAUGHN and ERWIN concur.