DEPARTMENT OF TRANSPORTATION, Plaintiff v. HAYWOOD COUNTY, Defendant

No. COA03-1479

(Filed 16 November 2004)

**1. Eminent Domain— proximity damages to remaining land— expert opinion**

The trial court erred by granting plaintiff-DOT a directed verdict on proximity damages in the condemnation of part of a tract of land. Defendant offered a reasonable valuation based on an expert witness's professional experience; its weight is a matter properly reserved for the jury.

**2. Eminent Domain— rental value of remaining land—expert opinion**

The trial court erred by granting plaintiff-DOT a directed verdict on the rental value of property remaining after the condemnation of part of the tract. Expert testimony reasonably demonstrated the impact of the taking and a temporary construction easement on the rental income generated by the property.

Appeal by defendant from judgment entered 11 July 2003 by Judge Albert Diaz in Haywood County Superior Court. Heard in the Court of Appeals 31 August 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for plaintiff-appellee.*

*Jeffrey W. Norris & Associates, P.L.L.C., by Jeffrey W. Norris, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Haywood County ("defendant") appeals a directed verdict in condemnation proceedings involving property in Waynesville, North Carolina. For the reasons stated herein, we reverse the judgment of the trial court and remand this case for a new trial.

On 22 January 2001, the Department of Transportation ("plaintiff") filed a condemnation action against defendant to take a portion of a tract of land located at the intersection of U.S. Highway 23 Business and Sims Circle Road in Waynesville. The Haywood County Planning Building is located on the property. The Planning Building houses several county agencies and Haywood County rents space in the building to several non-profit organizations. Prior to the taking, the property measured 26,060 square feet, and the Planning Building was located forty-four feet from Highway 23. Plaintiff took 2,861 square feet of the property adjacent to Highway 23, including a portion of the Planning Building's paved parking lot, and extended Highway 23 from two lanes to four lanes. The taking extends the right-of-way to thirty-three feet from the northwest corner of the Planning Building, and two and one-half feet from the southwest corner of the building. Plaintiff also acquired a temporary construction easement on the property in a strip parallel to Highway 23, which would expire upon completion of the highway expansion project.

The condemnation action alleged that plaintiff and defendant were unable to agree on a purchase price for the property. Plaintiff "estimated the sum of $10,125.00 to be just compensation," and placed the sum of money in escrow with the Haywood County Superior Court. On 22 January 2001, defendant filed an Answer and Counterclaim alleging that "[p]laintiff has not offered fair and reasonable value for the property taken," and "[a]s a result of plaintiff's taking defendant's property, the value of defendant's remaining property has been significantly depreciated."

This matter went to trial before a jury on 2 June 2003. Defendant presented its case first, calling to the witness stand three experts on land value to testify about the effect that the highway expansion would have on the value of the building. The witnesses testified that based on their experience, the value of the building would decrease 30% to 35% because of its proximity to the highway. Each witness further testified that the rental value of the building would decrease due to the temporary construction easement. At the close of defendant's evidence, plaintiff moved for a directed verdict on the issues of (1)

whether the building depreciated in value as a result of its distance from the highway ("proximity damages"), and (2) the rental value of the building as effected by plaintiff's temporary construction easement on the property. The trial court found that defendant's evidence was inadequate on both issues, and granted plaintiff's motion for directed verdict. In so doing, the trial court remarked from the bench as follows:

> First of all, the court recognizes that expert testimony that is helpful to the jury in carrying out its role in determining the truth is admissible based on proper foundation, but the court does have a duty to act as a gatekeeper and to insure that expert opinion is properly founded on some reliable methodology.

> The court did allow the evidence to come in so that it could consider it on its merits with regard to the proximity damage and rental value, but after considering that evidence, the court's conclusion that even taking the evidence in the light most favorable to the defendant, that that expert opinion is not based on any reliable methodology that the court could ascertain, that it was simply based on subjective hunches and speculation, and therefore it's the court's judgment that the plaintiff is entitled to a directed verdict as to the components of damages having to do with proximity damage and the rental damage for the temporary easement.

The trial proceeded on the issues of damages incurred by the taking of a section of the parking lot and the value of the land. At the close of all evidence, the jury rendered a verdict whereby it awarded defendant $21,000. Defendant appeals the directed verdict.

---

The issues presented on appeal are whether the trial court erred by (I) granting plaintiff's motion for directed verdict on the issue of proximity damage; and (II) granting plaintiff's motion for directed verdict on the issue of the rental value of the property.

[1] Defendant first argues that the trial court erred by granting plaintiff's motion for directed verdict on the issue of proximity damages. We agree.

A motion for a directed verdict presents the question of "whether the evidence presented is sufficient to carry the case to the jury." *Satterfield v. Pappas*, 67 N.C. App. 28, 30, 312 S.E.2d 511, 513, *disc. rev. denied*, 311 N.C. 403, 319 S.E.2d 274 (1984). The question of the sufficiency of the evidence to go to the jury is a question of law,

always to be decided by the court. *McFalls v. Smith*, 249 N.C. 123, 124, 105 S.E.2d 297, 297 (1958). "[U]nder our law, close cases, dubious cases, questionable cases, and even weak cases are still cases for the jury; but cases in which the evidence fails to establish one or more of their essential elements are not." *Millikan v. Guilford Mills, Inc.*, 70 N.C. App. 705, 710, 320 S.E.2d 909, 913 (1984), *cert. denied*, 312 N.C. 798, 325 S.E.2d 631 (1985). "If there is any evidence, more than a scintilla, the judge should allow the case to go to the jury, since he is not to consider the weight of the evidence, but whether there is any evidence sufficient for the jury to consider." *Gwyn v. Motors, Inc.*, 252 N.C. 123, 127, 113 S.E.2d 302, 305 (1960) (citations and quotations omitted).

Our standard of review for a directed verdict is "whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991), *citing Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971). Our Supreme Court has held that in land condemnation cases, "mere conjecture, speculation, or surmise is not allowed by the law to be a basis of proof in respect of damages or compensation. The testimony offered should tend to prove the fact in question with reasonable certainty." *R.R. v. Manufacturing Co.*, 169 N.C. 156, 160, 85 S.E. 390, 392 (1915), *see also Manufacturing Co. v. R.R.*, 233 N.C. 661, 670, 65 S.E.2d 379, 386 (1951) ("The rule is well settled that if there be no evidence, or if the evidence be so slight as not reasonably to warrant the inference of the fact in issue or furnish more than material for a mere conjecture, the court will not leave the issue to be passed on by the jury." (citations omitted)).

An expert's reliability need not be "proven conclusively reliable or indisputably valid before it can be admitted into evidence." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 460, 597 S.E.2d 674, 687 (2004). There is in fact an important difference between the admissibility of evidence and the weight that is assigned the evidence following admission. Traditionally, it is the jury that determines the weight. *Id.*

In land condemnation cases, expert real estate appraisers are not restricted to "any particular method of determining the fair market value of property either before or after condemnation." *Board of Transportation v. Jones*, 297 N.C. 436, 438, 255 S.E.2d 185, 187 (1979) (citing *Highway Commission v. Conrad*, 263 N.C. 394, 139 S.E.2d

553 (1965) (Expert witnesses given wide latitude regarding permissible bases for opinions on value.)). "A witness who has knowledge of value gained from experience, information and observation may give his opinion of the value of specific real property." 263 N.C. at 399, 139 S.E.2d at 557 (citations and quotations omitted).

In the present case, defendant presented three expert witnesses to testify about proximity damage to the building and the rental value of the property. For our analysis of the proximity damage issue, we focus particularly on the testimony of James Deitz. Deitz testified on direct examination as follows:

Q: Why have you depreciated the value of that building?

A: Because of the proximity damage we were just discussing.

Q: Did you use any percentage or how did you arrive at that?

A: I used a 35 percent depreciation factor.

. . . .

Q: So why did you put 35 percent depreciation on the building, sir?

A: That was my opinion after I had gave [sic] other properties some consideration, and based on my experience of the thousands of properties I have evaluated over the years and the hundreds that I have sold, that's exactly why I gave it that figure.

On cross-examination, Deitz testified as follows:

Q: Do you have any similar sales or comparable sales that corroborate your opinion that the building has been diminished in value 35 percent by relocating the right-of-way?

A: That is my personal opinion based on experience.

Q: Sure, but you can't point to a sale here in Haywood County to establish that?

A: The depreciation I placed on the building was placed there for proximity purposes. That in itself is something that is only used by condemnation-type situations, which there's nothing out there that you can find that's available to a real estate broker or office that could be used that even applies to that situation.

Q: So it's your testimony that there's not a sale out there where you can show a building sold for one price, the road was moved closer to it and it sold for 35 percent less?

A: I'm not saying that. That's possible because the road moved over in the situation—if you had one that was 300 feet from the road, that's a whole different story than one that's 44 feet from the road.

Q: Well, if there is a sale, if there is a sale for the road—

A: There is no sale pertaining to proximity that can be used by me. In other words, that is strictly a condemning authority's priority.

Q: So your opinion that the building has been diminished in value 35 percent—

A: That is correct.

Q: —isn't based on comparable sales or similar—

A: It's based on my knowledge of sales I have made and evaluations that I have made.

Guided by the principles of *Jones* and *Conrad,* we conclude that Deitz's testimony is sufficient evidence of proximity damages such that the trial court should not have directed a verdict on the issue. The testimony offers more than a merely speculative valuation of the property. The testimony offers a reasonable valuation based on the witness's professional experience. The weight to be attributed to the testimony is a matter properly reserved for the jury. For these reasons, we reverse the directed verdict on the issue of proximity damages.

[2] Defendant also argues that the trial court erred by granting plaintiff's motion for directed verdict on the issue of the rental value of the property. We agree.

"When rental property is condemned the owner may not recover for lost rents, but rental value of property is competent upon the question of the fair market value of the property at the time of the taking." *Kirkman v. Highway Commission,* 257 N.C. 428, 432, 126 S.E.2d 107, 110 (1962). The facts of *City of Fayetteville v. M. M. Fowler, Inc.,* are similar to the case at bar. 122 N.C. App. 478, 470 S.E.2d 343, *disc. rev. denied,* 344 N.C. 435, 476 S.E.2d 113 (1996). In *Fowler,* the City of Fayetteville condemned 287 square feet of prop-

**DEPARTMENT OF TRANSP. v. HAYWOOD CTY.**

[167 N.C. App. 55 (2004)]

erty owned by the defendant and leased to a third party for operation of a gasoline service station. The proposed taking involved a temporary construction easement, a permanent utility easement, and the closing of one of four driveways providing access to the business located on the property. At trial, the president of the defendant company testified on direct examination that as a result of closing one of the four driveways, gasoline sales would be reduced by twenty-five percent. 122 N.C. App. at 479-80, 470 S.E.2d at 345. He further testified as follows:

> Q: Does the fact that this property is now going to have as few as 25 percent fewer customers for the sales of gasoline, does that have an impact on the amount of rental that you can charge for this property?

> A: Yes, it will, because less people will come in and purchase gas, the fuel rent, the variable fuel rent will be less, and because there will be less customers coming into the location, I'll be able to—have to charge less rent for the building. *So that impact will make the property worth less after the taking.*

122 N.C. App. at 480, 470 S.E.2d at 345. This Court held that the witness's testimony was permissible to demonstrate that "the value of the remaining property would be diminished because of the impact of the taking on the rental income generated by the property." *Id.* Although the witness's testimony was not scientific, it informed the trial court of the factors that the witness considered when determining the loss in rental value, i.e. the reduced volume of customers, and the correlating reduced volume of gasoline sales.

In the present case, expert witness Carroll Mease testified on direct examination about the rental value of the Planning Building as follows:

> Q: Mr. Mease, in your opinion as a broker and a realtor, would this property lease for as much with a 36-month [construction easement] in front of it as it would without that [construction easement]?

> A: No, sir.

> Q: Why do you say that?

> A: . . . If I was showing that building as a real estate broker to a possible client and I took them down there and said okay, you know here's a nice building, you can rent it for this, this or

this, but I've got to tell you there is a three-year construction easement across here that means that you can't use this for three years.

. . . .

Q: [The building] has this construction easement in front of it . . . in your opinion in the lease of the building, would they pay as much or more because of this construction easement for 36 months?

A: They would pay less and most of the time they would walk away. They would not even consider it with that construction easement in there.

Expert witness Bobby Joe McClure testified on direct examination about the rental value of the Planning Building as follows:

Q: In your experience as a businessman, a builder and developer, what effect does [the temporary construction easement] have on this property?

A: It has a tremendous amount of effect on it because you are very limited for parking space to start with, and then when this property is being used for a construction easement, it's going to interfere with your people using the—

. . . .

The use of this property is going to prohibit the tenants who are County employees from using this property properly until after the construction easement is turned back to them.

Q: As a businessman and developer in this county, do you have an opinion satisfactory to yourself as to whether or not granting such an easement across the entire front of the property as shown in orange would increase or decrease the value of the remaining property during the period of that lease?

A: It would decrease the value of the property.

Q: And why would you say that, sir?

A: Well, they can park equipment on it, they can—

. . . .

They can store drainage pipes, they can store manholes that they would use in putting in drainage. They virtually would

have the complete use of that for the three years that they have the construction easement.

Q: In your opinion, what effect would that have on the value of this building as business and commercial property during that 36 months?

A: It would have a considerable amount of effect on it.

Q: And how much did you place on that for that—for a lease for that construction easement?

. . . .

A: I put a price of $700 per month at 36 months.

We conclude that the testimony of Mease and McClure is sufficient evidence of the rental value to carry the issue to the jury. Thus, the trial court erred by directing a verdict on the rental value issue. The testimony of Mease and McClure reasonably demonstrates the impact of the taking on the rental income generated by the property based on the witnesses' professional experience. For these reasons, we reverse the directed verdict on the issue of rental value.

We remand this case to the trial court for a new trial.

REVERSED and REMANDED.

Judges HUNTER and McCULLOUGH concur.