IN THE SUPREME COURT OF NORTH CAROLINA

No. 458PA13

TOWN OF MIDLAND

v.

DARRYL KEITH WAYNE, Trustee, or any successors in trust, under the Darryl Keith Wayne Revocable Trust Agreement, and any Amendments thereto, dated February 23, 2007

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 748 S.E.2d 35 (2013), affirming in part and reversing in part orders entered on 23 March 2012 and 7 June 2012 by Judge C. W. Bragg in Superior Court, Cabarrus County, and remanding for additional proceedings. Heard in the Supreme Court on 10 September 2014.

*Hartsell & Williams, P.A., by Andrew T. Cornelius and Brittany M. Love, for plaintiff-appellee.*

*Vandeventer Black LLP, by Norman W. Shearin, David P. Ferrell, and Ashley P. Holmes, for defendant-appellant.*

NEWBY, Justice.

In this condemnation action we decide the existence of a vested right to develop a subdivision and the effect of that vested right on the questions of unity of ownership and damages. We hold that the owners of the undeveloped portions of the subdivision have a vested right to complete the subdivision in accordance with the pre-approved plan. Having a vested right to complete the subdivision means both owners of the remaining undeveloped property, the named defendant and the limited liability

company, have interests affected by the condemnation of a portion of the subdivision, satisfying the unity of ownership requirement. The measure of damages is the difference between the value of the property before the taking and the value immediately afterwards. The vested right enhances the value of the property before the taking but is not a separate element of damages. Accordingly, we modify and affirm in part and reverse in part the decision of the Court of Appeals.

Defendant's predecessor in title, Darryl Keith Wayne ("Wayne"), owned two tracts of land totaling ninety acres ("Wayne Tracts").[1] Park Creek, LLC ("the LCC"), the majority of which is owned by Wayne, held the adjacent one hundred sixty acres. Together, Wayne and the LLC submitted a Customized Development Plan ("the 1997 plan") for a multiphase, two hundred fifty acre residential subdivision known as Park Creek ("Park Creek"). The Cabarrus County Planning and Zoning Commission approved the 1997 plan provided that the development met certain requirements. These requirements specified minimum lot sizes and established a certain percentage of the "high-income," two hundred home subdivision as open space. Wayne and the LLC developed the first two phases using some of the land owned by the LLC, installing water lines and other infrastructure designed and constructed to service the future phases as well. On or after 23 February 2007, Wayne conveyed his property to defendant, his revocable trust of which he is the trustee ("defendant"). By

---

[1] The Wayne Tracts consist of a 74.75 acre parcel and a 15.11 acre parcel. The condemned three-acre easement crosses both parcels.

2009 the first two development phases of Park Creek were substantially completed, representing roughly fifty percent of the subdivision, at a cost of approximately $4.6 million dollars. Most of the lots in the first two phases had been sold. At that time, the future phases of the subdivision, including one tract of about forty acres owned by the LLC ("LLC Tract") and the Wayne Tracts, remained mostly undeveloped. Since its inception defendant and the LLC have maintained the 1997 plan as required by the Town, and the legal effectiveness of the 1997 plan has never lapsed.

In February 2009 in Superior Court, Cabarrus County, the Town of Midland filed two separate condemnation actions against defendant, condemning three acres of the Wayne Tracts for a right-of-way and easement "to construct and operate a natural gas pipeline for the transmission and distribution of natural gas," "to construct and operate a fiber optic line," and "to obtain a temporary construction easement in order to construct the pipeline" ("the easement"). As required by statute, the Town deposited its estimated value and asked for a determination of just compensation. The Town did not name the LLC as a party or identify its tract in the condemnation actions, presumably because the easement did not cross any portion of the LLC property. Likewise, the Town did not specify the taking of the vested right to complete the subdivision as approved. The Town's condemnation actions contemplated taking only the three acres necessary for the easement.

Defendant filed an answer to each complaint, claiming the amount offered by

the Town was insufficient and asking for a determination of just compensation.[2]  In October 2011 defendant moved to consolidate the two actions for purposes of hearing all issues other than compensation.  Defendant also moved to amend his answers to include additional issues for adjudication, particularly those addressing "the scope of the land affected by the taking and the Town's inverse condemnation of certain areas of [his] property outside the temporary and permanent easement areas."

The same day that defendant moved to consolidate the actions, the LLC moved to intervene in the actions, asserting that the easement affected the LLC Tract as well.  The LLC stated that since its undeveloped land was part of Park Creek, "[t]he Court's determination of the area affected by the taking and disposition of [this action] may, as a practical matter, impair or impede [the LLC's] ability to protect its interest in the Subdivision rights in parcels of land which lie upon the Subdivision."[3]

On 27 October 2011, the trial court found that the two affected Wayne Tracts are adjacent to the LLC Tract and that Wayne "is the Trustee of Defendant and also the principal or exclusive owner of [the] LLC."  The trial court, however, denied the LLC's motion to intervene as untimely.  The trial court noted that the LLC "can

---

[2] As permitted under the condemnation statutes, *see* N.C.G.S. § 40A-48 (2013), in June 2011 three commissioners determined that defendant should receive $220,000, representing just compensation for the property taken.  The Town disagreed with the commissioners and requested a jury determination of value.  Defendant also desires to have a jury decide just compensation.

[3] The LLC also owns several unsold lots in the developed portion of Park Creek.  The effect of the condemnation, if any, on the unsold developed lots is not a part of these proceedings.

separately and adequately protect its interest by pursuing any separate action that may be available to it."[4]  In the same order the trial court also consolidated the two condemnation actions for certain purposes[5] and allowed defendant to amend his answers: (1) "to assert a counterclaim to seek compensation for an inverse condemnation resulting from [the Town's] actions in connection with the pipeline outside the boundaries of the property described in the declaration of taking," and (2) to request that the court treat the Wayne tracts "as a single parcel with 'other adjoining parcels owned by Defendant or individuals or related entities to Defendant.' "

In his amended answers dated 1 November 2011, defendant counterclaimed that, while constructing the natural gas pipeline and fiber optic line, the Town's contractor transported equipment and maintained construction staging areas outside the easement boundaries without his consent.  Defendant claimed that, as a result, "the Town has physically damaged and inversely condemned the Wayne Tracts outside and beyond the easement areas."  Defendant reiterated his request that plaintiff pay him "just compensation for the taking of the Wayne Tracts."

---

[4] It appears that the LLC attempted to assign its claim for damages to defendant. Later, the LLC initiated a separate action.  In two separate orders dated 21 March 2012 and 1 June 2012, the trial court concluded that the LLC impermissibly assigned its claim for damages, thereby violating the intent and spirit of the trial court's denial of the motion to intervene.  The trial court later granted a motion to consolidate the Town's condemnation actions against defendant and the action initiated by the LLC for the sake of judicial economy due to common questions of law and fact and the "virtually identical" issues involved.

[5] Hereinafter, the consolidated condemnation actions are referred to in the singular.

Additionally, defendant "reserve[d] the right to have the parcels to be condemned . . . and any other adjoining parcels owned by Defendant or individuals or related entities to Defendant treated as a single parcel for purposes of determining just compensation."

At the hearing for determination of issues under N.C.G.S. § 40A-47, defendant presented evidence that the easement's far-reaching effect, though perhaps unforeseen, decreases the net developable area of the subdivision property and impairs vital flexibility in its development. Defendant's expert asserted that the easement reduces road frontage on some lots, diminishes lot yield, adversely affects street designs and water line placement, shrinks or eliminates vegetative buffers, and reduces overall residential density. The expert noted that the easement mandates certain grade restrictions and includes other requirements such as buffer zones and set-offs. For example, before the easement took effect, any lots developed could extend onto a pre-existing utility easement; however, the new easement prevents development over itself, and its grading restrictions prevent the development of land used for the pre-existing utility easement as well. Moreover, according to defendant, the grading restrictions adversely affect the predetermined road network within the subdivision. Likewise, construction of the pipeline within the easement eliminated an existing buffer of mature woodlands, forcing defendant to plant a new vegetative buffer and further reducing the remaining developable land. The permanent effects of the easement, defendant argued, have made it economically

unfeasible for him to develop the Wayne Tracts in accordance with the 1997 plan, will cause him to incur additional development costs, and will reduce the overall value of the remaining undeveloped lots in the subdivision.

In an order dated 21 March 2012, the trial court concluded as a matter of law that the Town had inversely condemned a portion of the Wayne Tracts situated outside the easement by maintaining staging areas during construction. In the same order the trial court found that "the Cabarrus County Planning & Zoning Commission approved a Customized Development Plan for the Subdivision which included the Wayne Tracts," and subsequently, "Wayne has maintained the Plan as required by Cabarrus County." Based on defendant's evidence, the trial court found "that the impact of the gas pipeline easements would reduce the developable area of the Wayne Tracts, reduce road frontage for some lots, reduce lot yield, reduce flexibility in development, including adversely affecting street designs and locations, reduce or eliminate some vegetative buffers, and reduce residential density." As a result, "[t]he installation of the gas pipeline . . . reduced the net developable area available in the Wayne Tracts," making "it no longer economically feasible for Wayne to develop the Wayne Tracts in accordance with the Plan." The trial court further concluded that the easement "substantially interfere[d] with the elemental property rights in the Wayne Tracts, and thereby diminished the fair market value of the entire Wayne Tracts." As a matter of law, the trial court stated that "[t]he decrease in developable land and loss of density resulting from [the easement] has had a significant adverse

impact on Wayne's rights to develop the Subdivision in accordance with the Plan." Moreover, on the date the easement was taken, "the Plan was valid, remained in effect, and recognized by Cabarrus County." Therefore, the trial court concluded as a matter of law that the easement "resulted in a regulatory taking of the Wayne Tracts."

In a separate order issued the same day the trial court denied defendant's request that the Wayne Tracts and the adjacent property owned by the LLC be considered as one unified tract. The trial court determined that establishing a unified tract for the purpose of assessing condemnation damages requires " 'some unity of ownership . . . when separate parcels of land are involved.' " Relying on our decision in *Board of Transportation v. Martin,* 296 N.C. 20, 28, 249 S.E.2d 390, 396 (1978), the trial court noted that " 'a parcel of land owned by an individual and an adjacent parcel of land owned by a corporation of which that individual is the sole or principal shareholder cannot be treated as a unified tract for the purpose of assessing condemnation damages.' " The trial court determined as a matter of law that *Martin* controls here "where Wayne owns the Wayne Tracts and Park Creek, LLC, in which Mr. Wayne is majority owner, owns the adjoining land." Therefore, no unity of ownership existed between the Wayne Tracts and the LLC Tract, limiting the area affected by the taking for purposes of compensation to the Wayne Tracts.

Defendant successfully moved the trial court to amend its orders to recognize that he based his unity of ownership argument on his vested right to develop land

"upon the valid approval . . . of . . . a phased development plan, giving land owners the right to undertake and complete the development and use of said property under the terms and conditions of the . . . plan" and on his common law vested rights to develop his land based on his "substantial expenditures of money, time, labor or energy in a good faith reliance on a government approved land use." In its amended order the trial court found that it was "no longer economically feasible for Wayne to construct roads on the Wayne Tracts in accordance with the Plan," thus depriving him of "all practical uses of the Wayne Tracts." The Town's condemnation action, according to the trial court, has "had a significant adverse impact on Wayne's statutory and common law vested rights to develop the Subdivision in accordance with the Plan" and has resulted "in a regulatory taking of the Wayne Tracts." Nonetheless, the trial court once more found that, despite defendant's vested rights, the decision in *Martin* precludes finding unity of ownership between defendant and the LLC.

Before the damages phase of the trial began, both defendant and the Town entered interlocutory notices of appeal. *Town of Midland v. Wayne*, ___ N.C. App. ___, ___, 748 S.E.2d 35, 38 (2013). The Town appealed the trial court's ruling that maintaining the construction staging areas resulted in an inverse condemnation and that a separate and complete taking of the Wayne Tracts occurred. Defendant cross-appealed the trial court's conclusion that "no unity of ownership existed as to the contiguous tracts of land owned by Wayne and Park Creek, LLC."

First, addressing the Town's appeal, the Court of Appeals affirmed the trial court's conclusion that the construction staging areas located outside the easement constituted a temporary inverse taking, *id.* at ___, 748 S.E.2d at 38-39, and the Town has not sought further review of this issue. Thus, the decision of the Court of Appeals as to this issue is final.

Then, the Court of Appeals reversed the trial court's conclusion that the Town's condemnation action constituted a "regulatory" or separate and complete taking of the Wayne Tracts. *Id.* at ___, 748 S.E.2d at 39-40. The Court of Appeals first observed the absence of findings in the trial court's order to support its conclusion that the eighty-seven acres of the Wayne Tracts remaining outside the easement retain "no 'practical use . . . or reasonable value.' " *Id.* at ___, 748 S.E.2d at 39-40. Noting that " 'a taking does not occur simply because government action deprives an owner of previously available property rights,' " *id.* at ___, 748 S.E.2d at 39, the Court of Appeals concluded that the trial court erred in finding a separate and complete taking of the Wayne Tracts because the trial court's findings suggested that "the Wayne Tracts could still be developed for residential use, though not in accordance with the 1997 Plan," *id.* at ___, 748 S.E.2d at 40 (citing *Finch v. City of Durham N.C.*, 325 N.C. 352, 364, 366, 384 S.E.2d 8, 15, 16 (1989)).

Next, the Court of Appeals addressed defendant's argument "based on the trial court's findings that defendant had a 'vested right' in the 1997 Plan." *Id.* at ___, 748 S.E.2d at 40. Pointing to the Town's complaints which identified specific portions of

the Wayne Tracts as the " 'property [it] sought to acquire,' " as required by N.C.G.S. § 40A-20, the Court of Appeals determined that "where a condemner has taken a portion of a tract, 'evidence regarding the adverse effects of the condemnation on the remaining property is admissible, but such effects are not separate items of damages.' " *Wayne*, *id.* at ___, 748 S.E.2d at 40 (quoting *Bd. of Transp. v. Jones*, 297 N.C. 436, 439, 255 S.E.2d 185, 187-88 (1979) (citation and internal quotation marks omitted)). Rather than requiring "separate" damages for the loss of defendant's "vested rights," the Court of Appeals reasoned the compensation awarded in exchange for the easement may account for any "diminution in [market] value of the Wayne Tracts." *Id.* at ___, 748 S.E.2d at 40 ("Defendant is not entitled to additional compensation, beyond the diminution in value as provided in N.C. Gen. Stat. § 40A-64, based on the loss of the right to develop the property in a certain way.").

The Court of Appeals lastly addressed defendant's unity of ownership argument. Relying on our decision in *Martin*, the Court of Appeals affirmed the trial court's conclusion that no unity of ownership existed between the Wayne Tracts and the LLC Tract for the purpose of determining compensation. *Wayne*, *id.* at ___, 748 S.E.2d at 41. In so holding, the Court of Appeals noted that defendant, "*individually*, has no interest in the tract owned by Park Creek, LLC," but "merely owns an interest in the limited liability company which owns the tract." *Id.* at ___, 748 S.E.2d at 41. Because defendant has secured the advantages of the LLC as a liability shield, the Court of Appeals concluded that he cannot now request that the court disregard it.

*Id.* at ___, 748 S.E.2d at 41-42. Ultimately, given its analysis, the Court of Appeals found a determination of the existence of a vested right to be unnecessary. *Id.* at ___ n.2, 748 S.E.2d at 40 n.2.

We allowed defendant's petition for discretionary review. *Town of Midland v. Wayne*, 367 N.C. 292, 753 S.E.2d 664 (2014). On appeal, defendant reasserts that a taking of his vested right to develop the remainder of Park Creek under the 1997 plan has occurred, requiring the Town to identify it in the complaint and compensate for the vested right as an additional, separate element of damages. Moreover, defendant argues that the vested right to develop these contiguous parcels according to that plan satisfies the unity of ownership required between the Wayne Tracts and the LLC Tract. The Town first responds that defendant failed to meet the criteria for a statutory vested right under N.C.G.S. § 153A-344.1 because the statute terminated any such vested right in defendant two years after approval of the 1997 plan, unless specifically extended by the county. *See* N.C.G.S. § 153A-344.1(d)(1)-(2) (2013). The Town further contends that defendant failed to establish a common law vested right because substantial expenditures had not been made on the undeveloped tracts of the subdivision. As to whether the Town must identify and compensate for any interference with a vested right, the Town argues that the complaints sufficiently identify the property rights and tracts of land affected by the taking. Finally, the Town asserts the Court of Appeals correctly held that there was no unity of ownership as to the Wayne Tracts and the LLC Tract.

"[T]he power of eminent domain[ ] is one of the prerogatives of a sovereign state. . . . Its exercise, however, is limited by the constitutional requirements of due process and payment of just compensation for property condemned." *Dep't of Transp. v. M.M. Fowler, Inc.*, 361 N.C. 1, 4, 637 S.E.2d 885, 889 (2006) (citations and quotation marks omitted). *See* N.C. Const. art. I, § 19 ("No person shall be . . . deprived of his . . . property, but by the law of the land."); *see also* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). Due process requires that the property right taken and the owner of the right be identified in the condemnation complaint. *See Barnes v. N.C. State Highway Comm'n*, 250 N.C. 378, 387, 109 S.E.2d 219, 227 (1959) (noting the government's duty to make just compensation to the owner of the property appropriated). Just compensation means "that persons being required to provide land for public projects are put in the same financial position as prior to the taking." *Dep't of Transp. v. Rowe*, 353 N.C. 671, 679, 549 S.E.2d 203, 210 (2001) (citations omitted), *cert. denied*, 534 U.S. 1130, 122 S. Ct. 1070, 151 L. Ed. 2d 972 (2002).

"If there is a taking of less than the entire tract, the measure of compensation is the greater of either (i) the amount by which the fair market value of the entire tract immediately before the taking exceeds the fair market value of the remainder immediately after the taking; or (ii) the fair market value of the property taken." N.C.G.S. § 40A-64(b) (2013); *see also Fowler*, 361 N.C. at 5, 637 S.E.2d at 889 (defining just compensation in condemnation proceedings instituted by the Department of

Transportation as the difference between the "before value" and the "after value" (citing N.C.G.S. § 136-112(1) (2005)))[6]   In weighing before and after values, a determination of the property's remaining fair market value considers the property's worth in light of its " 'availability for all valuable uses.' " *Fowler*, 361 N.C. at 6, 637 S.E.2d at 890 (quoting *State v. Johnson*, 282 N.C. 1, 14, 191 S.E.2d 641, 651 (1972) (citation and quotation marks omitted)).

We must first determine the property interest affected by the condemnation action, identifying the property right taken and its owner.  After hearing evidence, the trial court determined that defendant had a vested right to develop the property under the 1997 plan.  We agree.  While the trial court found a vested right based on both a common law and statutory analysis, we confine our review to the common law.

At common law, government may not deprive a landowner of his right to continue with an approved use of his land when, in good faith and in reliance upon valid governmental approval, he makes substantial expenditures or incurs significant contractual obligations towards that approved use.  *Town of Hillsborough v. Smith*, 276 N.C. 48, 55, 170 S.E.2d 904, 909 (1969).  "Once [a developer] makes substantial expenditures in good-faith reliance on the approval, he has a vested right to carry out the project as approved*." River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 112,

---

[6] The valuation approach used in subdivision 40A-64(b)(i) is known as the "before and after method."  While subdivision 40A-64(b)(ii) allows valuation to be computed based on "the fair market value of the property taken," it appears, here, that the before and after method will result in the greater recovery.

388 S.E.2d 538, 544-45 (1990) (citing *Smith*, 276 N.C. at 48, 170 S.E.2d at 904). "[A] determination of the 'vested rights' issue requires resolution of questions of fact, including reasonableness of reliance, existence of good or bad faith, and substantiality of expenditures." *Godfrey v. Zoning Bd. of Adjust.*, 317 N.C. 51, 63, 344 S.E.2d 272, 279 (1986) (citations omitted).

The trial court's findings of fact sufficiently support its conclusion that the Town's condemnation action interfered with defendant's vested right to develop the future phases of the subdivision under the 1997 plan. Defendant's approved, multiphase residential development plan—a preliminary planning followed by phased implementation—is consistent with the inherent nature of residential development. Defendant reasonably and in good faith relied on that plan because it has never lapsed in legal effect. *See River Birch*, 326 N.C. at 111, 388 S.E.2d at 544 ("[T]he preliminary plan is a formal document that constitutes the most critical step in the subdivision approval process."); *Dep't of Transp. v. Nelson Co.*, 127 N.C. App. 365, 368-69, 489 S.E.2d 449, 451 (1997) (acknowledging the unity of use component inherent in the multiphase commercial development process). As found by the trial court, defendant in good faith reliance made substantial expenditures of money, time, and labor based on the 1997 plan, thus supporting his common law vested right to develop the subdivision in accordance with the plan. The Town's argument that the expenditures were directed primarily to the developed first two phases of Park Creek

fails to recognize the unified nature of the 1997 plan and the benefit of the expenditures to the entire subdivision.

This vested right determination also informs our decision as to which parties are affected by the taking. We agree with defendant's argument that the common law vested right to develop the contiguous parcels according to the 1997 plan helps satisfy the unity of ownership required between the Wayne Tracts and LLC Tract. Under section 40A-67, "all contiguous tracts of land that are in the same ownership and are being used as an integrated economic unit shall be treated as if the combined tracts constitute a single tract" for the purpose of determining just compensation in an eminent domain proceeding. N.C.G.S. § 40A-67 (2013). Three factors generally determine whether contiguous tracts of land should be considered as a whole: (1) "unity of ownership" between the parcels; (2) "unity of use" between the parcels; and (3) "physical unity" between the parcels. *Barnes*, 250 N.C. at 384, 109 S.E.2d at 224-25. " 'Under certain circumstances the presence of all these unities is not essential.' " *Martin*, 296 N.C. at 25, 249 S.E.2d at 394 (quoting *Barnes*, 250 N.C. at 384, 109 S.E.2d at 225). Though some unity of ownership is required, a party need not " 'have the same quantity or quality of interest or estate in all parts of the tract.' " *Id.* Among the three factors, the one " 'given greatest emphasis' " and most often found " 'controlling in determining whether land is a single tract is unity of use.' " *Martin*, 296 N.C. at 25-26, 249 S.E.2d at 394 (quoting *Barnes*, 250 N.C. at 384-85, 109 S.E.2d at 225); *see Nelson*, 127 N.C. App. at 368, 489 S.E.2d at 451 (concluding

that, if a completed, commercially developed office park would be considered an "integrated economic unit," a partially completed office park meets that requirement as well). The connecting parcels must "be presently, actually, and permanently used in such a manner that the enjoyment of the parcel taken is reasonably and substantially necessary to the enjoyment of the remaining parcel." *Martin*, 296 N.C. at 29, 249 S.E.2d at 396.

Here the undeveloped tracts of Park Creek are contiguous, satisfying the "physical unity" requirement. Most importantly, as we have said, is "unity of use." Not only are the Wayne Tracts and LLC Tract part of the same subdivision, they are subject to the same vested right to be developed pursuant to the 1997 plan. Defendant and the LLC each have an identifiable interest in the lands of the other; the Wayne Tracts and the LLC Tract are indispensable parts of the unified project. Consequently, the easement area taken is "reasonably and substantially necessary to the enjoyment" of both the Wayne Tracts and the LLC Tract. *Id.* The unity of use is controlling and being a part of a vested development plan is the strongest evidence of unity of use. Nonetheless, a modicum of unity of ownership must also be present. *Cf. City of Winston-Salem N.C. v. Yarbrough*, 117 N.C. App. 340, 345, 451 S.E.2d 358, 362 (1994), *cert. denied*, 340 N.C. 110, 456 S.E.2d 311 (1995) (concluding that unity of ownership exists between a husband and a wife, each owning separate tracts, because of the inchoate dower interest of the wife in the husband's property). Given the significance of the joint vested right to develop Park Creek, we hold that the unity

of ownership is satisfied here, where Wayne is the trustee of his revocable trust owning the Wayne Tracts and has the controlling interest in the LLC.

The Court of Appeals and the trial court relied heavily on *Martin* to conclude that unity of ownership did not exist between defendant and the LLC. Each court believed *Martin* involved one tract owned by an individual and an adjacent tract owned by a corporation of which the individual was the sole shareholder. The facts and holding of *Martin*, however, are far more nuanced than that analysis implies. First, title to the adjacent property sought to be included in the condemnation in *Martin* was not titled in the corporation but in a distinct, unrelated entity, a bankruptcy trustee. *Martin*, 296 N.C. at 29-30, 249 S.E.2d at 396-97. Further, and most importantly, there was no unity of use; the adjacent parcel was not a part of an approved development project. Though the owner in *Martin* may have intended some future development of the undeveloped parcel in conjunction with the adjacent developed tract, unlike here, that site had not received an approved, unified development plan encompassing the entire property. *Id.* at 30, 249 S.E.2d at 397.

Finally, we consider the measure of damages. Defendant argues, and the trial court determined, that the loss of the vested right is a separate "property interest" for which he is entitled to compensation. We do not agree. The vested right is not a property interest separate from the real estate to which it attaches; it is, instead, a unique quality of that land which enhances the value. Generally, an undeveloped parcel of land for which development has been approved is significantly more

valuable than the same parcel without the development rights. As such, it is an important feature of the condemned land and not a separate, compensable property right.

According to defendant and the trial court, the Town's condemnation undermines defendant's vested right to implement an approved plan to develop the future phases of the subdivision in harmony with the already completed development. Defendant incurred substantial expense in good faith reliance on the 1997 plan, including, *inter alia*, installation of infrastructure, preparation of plats and surveys, and marketing the subdivision. The significant adverse effects of the easement and resulting losses in developable area, residential density and flexibility in the development, and the shifting of shared costs prevent defendant from completing the 1997 plan in accordance with his vested right.

Nonetheless, the statute establishes that the measure of damages is simply the difference between the value immediately before the taking and that immediately afterwards. N.C.G.S. § 40A-64(b). The fact that the property is subject to the vested right to be developed under the 1997 plan will be the significant factor in determining the value before the taking. During the damages stage of trial, the jury may believe the evidence presented, as did the trial court, that the condemnation has virtually eliminated the use of the property as a residential subdivision. If so, the jury's ultimate valuation will reflect the value of the property before the taking as an approved residential development and the value after the taking as acreage without

that significant benefit. Regardless, the remaining undeveloped portion of Park Creek retains some value. Thus, the statutory before and after method will provide defendant and the LLC just compensation for the taking, including any loss of the ability to develop the subdivision under their vested right.

In sum, we hold that defendant and the LLC have a vested right to complete Park Creek pursuant to the 1997 plan. Since defendant and the LLC own contiguous properties which are subject to a vested, unified development plan adversely affected by the condemnation, and Wayne has a modicum of interest in both, unity of ownership exists. The Court of Appeals' decision as to the lack of unity of ownership is reversed. Regarding the measure of damages, loss of a vested right is not a separate element of recovery but a quality of the property. The value of the property before the taking will reflect the enhancement resulting from the vested right as the value afterward will reflect the diminution or destruction of the right. As to this issue, the Court of Appeals' decision is modified and affirmed.

Accordingly, the decision of the Court of Appeals is modified and affirmed in part and reversed in part. This matter is remanded to the Court of Appeals for further remand to the Superior Court, Cabarrus County, to determine at trial the damages arising from the condemnation and for further proceedings not inconsistent with this opinion.

MODIFIED AND AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Justice ERVIN did not participate in the consideration or decision of this case.