UNITED STATES
v.
Daisy L. CUNNINGHAM and Beatrice Cunningham, owners of Lot 10
and
W. A. Worth et al., owners of Lot 12.
No. 262.

United States District Court
E. D. North Carolina,
Fayetteville Division.
Sept. 15, 1958.

Julian T. Gaskill, U. S. Atty., Raleigh, N. C., Clyde Gooch, Asst. U. S. Atty., Salisbury, N. C., for plaintiff.

McLendon, Brim, Holderness & Brooks, Greensboro, N. C., for defendants.

HAYES, District Judge.

In view of the extended findings, rulings and conclusions of law and the long record and since this case has already been heard on appeal, United States v. Cunningham, 4 Cir., 246 F.2d 330, no useful purpose can be served by any extended opinion by this court.

Tract No. 10 consists of two lots purchased off of Tract No. 12 a short time before the commencement of this proceeding at the price of $1,000 each. The Appraisers valued them at $2,000 each and this court found the value at $1,500 each on June 25, 1953, the date of taking.

Tract No. 12 is a tract of land containing 1,858 acres known as a part of Bodie Island, bounded on the east by the Atlantic Ocean, narrowing to a point at Oregon Inlet on the south, on the west by Pamlico and Roanoke Sounds and on the north by property of the United States. The Appraisers fixed the value in a lump sum of $484,000 which was their determination when the Circuit Court ordered it remanded for specific findings. In their report they find the highest value by dividing the tract into four tracts:

Tract A—containing 345 acres to be made into residential and commercial lots lying between the Ocean and the State Highway;

Tract B—containing 182 acres south of Tract A, but too low for buildings;

Tract C—the trading center at Oregon Inlet, including 10 acres;

Tract D—embracing the 1,321 acres west of the highway and bordering Pamlico and Roanoke Sounds.

They made no determination of their valuation on either parcel which would have been much better.

The property owners request the court to revise the report and for this court to fix the market value of Tract A at $379,500, Tract B at $9,100, Tract C at $75,000, Tract D at $46,410, making a total of $510,010; but, in deference to the finding of the Commission, to make it $484,000.

Due to the court's determination that the 345 acre tract in its present state is not adaptable for the purposes stated by the Commission without incurring prohibitive costs to build it to a higher elevation and having revised that tract to a maximum of 193 lots at $1,000 or $193,000, found it necessary to divide the remainder into a 25 acre tract at the Inlet which embraces the piers, store building, ice house, because the evidence clearly shows that the facilities there were inadequate to care for the demand which was increasing and that the area's facilities could be doubled and utilized by the commercial demand; and values this property at $85,000, and the rest of the boundary at $65,000, making a total of $343,000.

The foregoing approach was testified to by government expert witnesses Fulcher and Hall. The division into three parcels and valuation of each one and the total of the three parcels was followed because each unit's valuation in no manner involved duplications; it discloses the reasonable approach to arrive at the fair market value of the entire property

on a basis which a seller and a buyer would employ; it does not mean that each parcel is to be sold as a separate unit but it does mean that these three units selling as one boundary would have the fair market value of $343,000 on June 25, 1953. It is believed that this procedure is approved in Cade v. United States, 4 Cir., 213 F.2d 138.

There was extensive testimony of the presence of ilmenite on this tract; that explorations had been made by DuPont and National Lead and that a lease had been procured by National Lead a few miles from the Worth property. However, the evidence clearly showed that these companies found the Mineral of no commercial value now or in the next fifty years. This testimony conclusively shows that the ilmenite did not increase the market value of the tract on June 25, 1953. If it in fact had any commercial value, it would have been exceedingly small and would have interfered with the use of the property on a far more valuable basis. It could not be mined for ilmenite and sold for the other purposes which the court found to be the highest price for the purposes for which the property was best adapted. The evidence of experts showed that the entire quantity of ilmenite was insufficient to install the necessary equipment to extract the mineral; that the costs would exceed the market price of the product.

The court also holds that the Act of Congress authorizing the dredging of the Inlet and Sound to a depth of 12 feet as against its present depth of 6 feet added no immediate commercial value to the fair market value of it on June 25, 1953. A buyer would know that the authorization might never result in any appropriation to do it. It would be too speculative to increase the fair market value on that fact.

The evidence shows conclusively that development of Kill Devil Hills, Kitty Hawk and Nags Head has been in progress for many years and 60% of the Ocean frontage in those areas is still vacant; it also shows that generally that area is higher elevation and less liable to damage by tides than the Worth and Cunningham property; if it be assumed that 50 foot Ocean front lots in that area averaged $2,000 on June 25, 1953 (which is higher than the facts justify), the Cunningham lots in a totally undeveloped area would not have a market value greater than $1,500 each. While it is possible that some peculiar person might be found who would want a lot away from everything—stores, Post Office, beach and life-guard—that is not probable and the market value must be based on reason and probabilities.

Each property owner is entitled to just compensation, no more and no less, and that test is met where they are awarded the highest market price it would bring for its most advantageous uses then and in the forseeable future.