IN THE SUPREME COURT OF NORTH CAROLINA

No. 217PA24-1

Filed 12 December 2025

ELIZABETH MATA and THE MATA FAMILY, LLC

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATIONN and NORTH CAROLINA TURNPIKE AUTHORITY

On discretionary review pursuant to N.C.G.S. § 7A-31 of a divided decision of the Court of Appeals, 294 N.C. App. 705 (2024), affirming in part and reversing in part an order and judgment entered on 5 June 2023 by Judge G. Bryan Collins, Jr. in Superior Court, Wake County, and remanding for further proceedings. Heard in the Supreme Court on 16 September 2025.

*Cranfill Sumner LLP, by George B. Autry, Jr., Stephanie H. Autry, and Jeremy P. Hopkins, for plaintiffs-appellees.*

*The Banks Law Firm, P.A., by Howard B. Rhodes; North Carolina Department of Justice, by Jeanne Washburn, Assistant Attorney General; Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by William H. Moss; and Skidmore Law Group, PLLC, by Matthew W. Skidmore, for defendant-appellant North Carolina Department of Transportation.*

EARLS, Justice.

This case requires the Court to clarify two fundamental aspects of just compensation for takings effectuated under the now-repealed Transportation Corridor Official Map Act (Map Act), N.C.G.S. §§ 136-44.50 through 44.54 (repealed 2019). On 6 August 1996, the North Carolina Department of Transportation (DOT)

recorded a corridor map covering approximately 9.93 acres of land owned by plaintiffs Elizabeth A. Mata and The Mata Family, LLC (collectively, Matas), restricting their fundamental rights to improve, develop, and subdivide the property. These restrictions remained in place for nearly twenty years until the General Assembly rescinded all Map Act corridors on 11 July 2016 in response to this Court's decision in *Kirby v. North Carolina Department of Transportation*, 368 N.C. 847 (2016), which held that Map Act restrictions constituted takings by eminent domain requiring just compensation. Plaintiffs filed an inverse condemnation action in 2019 seeking compensation for the twenty-year taking. After a hearing, the trial court concluded that the proper measure of damages was fair rental value, the measure of damages for a temporary taking. The Court of Appeals agreed that the 2016 legislative rescission retroactively transformed what *Kirby*, and *Chappell v. North Carolina Department of Transportation*, 374 N.C. 273 (2020), characterized as an "indefinite" taking into a "temporary" taking, but reversed the trial court's damages determination, directing instead that damages be calculated as "the diminution in value . . . until 11 July 2016." *Mata v. N.C. Dep't of Transp.*, 294 N.C. App. 705, 713 (2024).

We hold that Map Act corridor recordings effectuate indefinite takings of fundamental property rights at the moment of recording, and subsequent legislative rescission does not retroactively transform an indefinite taking into a temporary one for purposes of calculating just compensation. The proper measure of damages is the

difference between the fair market value of the property immediately before and immediately after the corridor map recording, considering all pertinent factors including the indefinite nature of the restrictions and any effect of reduced *ad valorem* taxes. *Chappell* 374 N.C. at 284. Expert appraisers may employ various acceptable methodologies, including comparable sales, income capitalization (which may incorporate rental value considerations), or a cost approach to determine these before-and-after fair market values, provided the ultimate comparison is between fair market values as of the date of the taking. *Id.* at 283–85. Accordingly, we reverse the decision of the Court of Appeals and remand this case for proceedings consistent with this opinion.

## I.    Background

In 1987, the General Assembly enacted the Roadway Corridor Official Map Act. With its passage, the Map Act limited a landowner's rights to obtain a permit to build any structure or building on the affected land, for example, and prevented the property from being subdivided or developed in certain ways. *See* N.C.G.S. § 153A-335, 136-44.51(a) (1987). Importantly, the Act described these restrictions placed on property owners as permanent takings; however, when calculating the value of the land before the corridor map was recorded and the value of the land afterward, all pertinent factors were to be considered, including the restriction on each plaintiff's fundamental rights and any effect of the reduced *ad valorem* taxes on the subject property. *See id*; *Kirby*, 368 N.C. 847 (2016).

On 1 June 1973, Elizabeth Mata acquired a fee simple interest in approximately 94 acres of real property in Apex, Wake County (the Mata Property). On 20 November 2012, the Mata Property was deeded to The Mata Family, LLC.

On 6 August 1996, the DOT recorded a corridor map (1996 Corridor Map) pursuant to the Map Act for the I-540 highway project. That corridor map covered approximately 9.93 acres of the Mata Property. This recording imposed restrictions on plaintiffs' core property rights to improve, develop, or subdivide the designated portion of the Mata Property.

In *Kirby v. North Carolina Department of Transportation*, this Court clarified that the restrictions imposed under the Map Act constituted a taking by eminent domain for which just compensation was due. 368 N.C at 848. Specifically, we noted that the recorded corridor maps "restricted [the landowner's] rights to improve, develop, and subdivide their property for an indefinite period of time." *Id.* at 856. Even though the Act provided certain ways that a landowner could become exempt from the recorded restrictions, *id.* at 849–50, we concluded that "[i]n all instances, . . . the restrictions imposed upon the property remain indefinitely, absent affirmative action by the owner and either approval from the State or a certain lapse of time." *Id.* In light of that indefinite taking of fundamental property rights, the proper measure of damages was "the value of the land before the corridor map was recorded and the value of the land afterward, taking into account all pertinent factors, including the restriction on each plaintiff's fundamental rights, as well as any effect of the reduced

*ad valorem* taxes." *Id.* at 856.

On 11 July 2016, the General Assembly rescinded all corridor maps recorded pursuant to the Map Act. The General Assembly later repealed the Map Act in its entirety, effective 13 June 2019. An Act to Repeal the Transportation Corridor Official Map Act, S.L 2019-35, § 1, 2019 N.C. Sess. Laws 211.

On 26 February 2019, Elizabeth Mata and The Mata Family, LLC filed an inverse condemnation action under N.C.G.S. § 136-111. Plaintiffs sought compensation for the Map Act restrictions which had encumbered the Mata Property from 6 August 1996 to 11 July 2016.

On 7 April 2020, DOT filed a direct condemnation action on the Mata Property pursuant to N.C.G.S. § 136-103 to acquire additional rights on both the same and other land covered by the 1996 Corridor Map for the purpose of building the I-540 project. At the time DOT filed its direct condemnation action, the Map Act restrictions no longer encumbered the Mata Property.

On 17 May 2023, the trial court held a hearing on DOT's motion to determine all preliminary issues other than just compensation, pursuant to N.C.G.S. §§ 136-108 and 136-111. Following the hearing, the trial court found and determined that the DOT had effectuated a temporary taking of the Mata Property from 6 August 1996 to 11 July 2016, by way of the Map Act corridor restrictions. The court decreed that the Matas were accordingly entitled to just compensation. The measure of that compensation, namely, should follow the appraisal method for so-called "temporary"

takings: "[t]he difference in the value of the property immediately before and immediately after the taking." In making that calculation, "appraisers may use rental value to measure the value of the property during the duration of the taking."

The DOT, together with the North Carolina Turnpike Authority, appealed the trial court's order on 30 June 2023. The Court of Appeals affirmed in part and reversed in part. *Mata*, 294 N.C. App. at 713. The appellate court agreed with the trial court's determination that the eventual rescission of the corridor recording transformed the taking of the Mata's Property into a temporary taking, and further concluded that the trial court correctly found that the temporary taking "occurred between 6 August 1996 until 11 July 2016." *Id.* But the Court of Appeals reversed in part on the measure of just compensation:

> The proper measure of the damages to be proven by Plaintiff is the diminution in value on the date of the filing of the highway corridor on 6 August 1996 until 11 July 2016, "taking into account all pertinent factors" to include the reduction in assessed *ad valorem* taxes Plaintiffs benefitted from during the period of the relevant temporary taking. *Chappell*, 374 N.C. at 284, 841 S.E.2d at 522. The order of the trial court is reversed on the measure of damages Plaintiff must prove.

*Id.*

Judge Murphy concurred in part and dissented in part, and would have held that the property's rental value was the proper measure of damages in the case of a temporary taking, consistent with the Court of Appeals reasoning in *Sanders v. North Carolina Department of Transportation*, No. COA22-440, slip op. 23–25 (N.C. Ct. App.

Feb. 6, 2024) (unpublished).[1]

The DOT sought discretionary review of two issues: (1) whether the Court of Appeals erred by failing to follow this Court's decisions in *Kirby* and *Chappell* as to the nature of the taking, and (2) whether the Court of Appeals erred by failing to apply the correct measure of damages for a Map Act taking, which DOT argued "is the change in the property's fair market value from immediately before to immediately after the date of taking, plus interest from the date of taking to the date of final judgment." *Mata v. N.C. Dep't of Transp.*, 294 N.C. App. 705 (2024). This Court allowed discretionary review of both issues on 21 March 2025. We now reverse.

## II.    Analysis

The DOT advances three main arguments. First, it contends that the Court of Appeals mischaracterized Map Act takings as "temporary," contradicting *Kirby*'s holding that Map Act takings are indefinite in nature. In essence, DOT's position is that the subsequent legislative rescission of the corridor maps does not retroactively transform an indefinite taking into a temporary one—the character of what was taken must be determined at the moment of the taking, not by hindsight knowledge of events that occurred twenty years later. Second and relatedly, DOT asks this Court to reverse the Court of Appeals as to the correct measure of damages, which that court described as the ongoing "diminution in value . . . until 11 July 2016," *Mata,*

---

[1] This Court simultaneously reverses the Court of Appeals *Sanders* decision in another decision filed today, *Sanders v. N.C. Dep't of Transp.*, No. 87PA24 (N.C. Dec. 12, 2025).

294 N.C. App. at 713, and to clarify that the proper measure of damages is fair market value before and after the taking together with the requisite award of interest. Third and finally, DOT asks this Court to reaffirm that rental value is an acceptable appraisal method under the income capitalization approach to determining fair market value, and to disavow any language in the Court of Appeals' opinion that could be read to prohibit consideration of rental value.

## A. Standard of Review

Our review of a Court of Appeals decision after a final determination by that court is for errors of law. N.C. R. App. P. 16(a). Questions of law, including statutory interpretation and the constitutional dimensions of the State's taking power under eminent domain, are reviewed de novo. *See Wilkie v. City of Boiling Spring Lakes,* 370 N.C. 540, 547 (2018); *Chappell,* 374 N.C. at 281.

## B. Nature of the Taking

This Court's precedent confirms that a Map Act restriction was an indefinite taking at the time the property was placed on the recording map. That conclusion is not altered in light of the later rescission of the corridor maps by the General Assembly on 11 July 2016, because fundamentally the relevant indefinite "taking" of core property rights occurred at the point of the initial recording.

*Kirby* confirmed that DOT's use of the Map Act to record highway transportation corridor maps constituted an exercise of the Department's power of eminent domain and "effectuated a taking of fundamental property rights." 368 N.C.

at 856. We characterized Map Act restrictions as creating an "indefinite restraint on fundamental property rights" that restricted landowners' rights for an unlimited period of time. *Id.* at 855.

The indefinite nature of the taking *at the point of the corridor recording* was central to *Kirby*'s holding. We explained that "[u]pon NCDOT's recording of the highway corridor maps at issue here, the Map Act restricted plaintiffs' fundamental rights to improve, develop, and subdivide their property for an unlimited period of time." *Id.* at 848. The Map Act imposed restrictions that "remain indefinitely, absent affirmative action by the owner and either approval from the State or a certain lapse of time." *Id.* at 850. The statute provided no guarantee that the highway would ever be built, and no deadline for DOT to act, and placed the burden on property owners to seek relief through administrative processes that themselves had no assured timeline.

Moreover, "[t]he Map Act's indefinite restraint on fundamental property rights is squarely outside the scope of the police power." *Id.* at 855. The nature of what the State restricted made this a taking, as opposed to a valid exercise of regulations imposed under the police power. The Court expressed concern that were the State to succeed in classifying these takings as mere temporary regulations, it would effectively grant itself the right to "hinder property rights indefinitely for a project that may never be built." *Id.*

In *Chappell v. North Carolina Department of Transportation*, we reaffirmed

the indefinite nature of Map Act takings. 374 N.C. at 284. We observed that, such

takings created "an indefinite negative easement" *id.*, and an "indefinite restraint on

fundamental property rights." *Id.* (quoting *Kirby*, 368 N.C. at 855–56). Significantly,

we stressed that judicial review of Map Act claims should focus on the substance of

what was deprived to property owners; stating that "what matters is whether the

trial court correctly applied the law concerning how just compensation is measured,

not the label given by the trial court or the parties to the taking that occurred." *Id.* at

283.

Against this backdrop, the Court of Appeals, while understandably seeking to

address a challenging circumstance, erred by concluding that the 2016 rescission of

corridor maps retroactively transformed the taking from indefinite to temporary. The

court reasoned:

> The "indefinite period of time" referenced in *Kirby*
> continued until the DOT either released the property under
> the statute or filed a direct condemnation action to take
> title to the fee and complete the highway project. . . . In
> response to our Supreme Court's decision in *Kirby*, the
> North Carolina General Assembly rescinded all Map Act
> corridors on 11 July 2016. . . . The termination of all Map
> Act corridors removed the negative restrictions as of 11
> July 2016. . . . The Map Act restrictions dates in effect were
> properly defined from DOT's recording the highway
> corridors on 6 August 1996 until the corridors were
> rescinded as of 11 July 2016. The taking was no longer
> "indefinite."

*Mata*, 294 N.C. App. at 712 (internal citations omitted).

In our view, this reasoning confuses the duration of a restriction with the

nature of the property interest taken. When DOT recorded the 1996 Corridor Map on 6 August 1996, it effectuated a taking of Matas' fundamental rights to improve, develop, and subdivide 9.93 acres of their property. *See Kirby*, 368 N.C. at 856. That taking was, by its very nature and statutory design, indefinite—it imposed restrictions that would continue without expiration unless and until: (1) DOT acted to acquire the property or approve development; (2) the property owner successfully navigated lengthy administrative relief processes; or (3) the General Assembly intervened to rescind the maps.

The character of the property interest taken is determined at the time of the taking, not by subsequent events that may—or may not—occur decades later. Consider that, at the moment DOT recorded the 1996 Corridor Map, neither DOT nor plaintiffs could predict with certainty:

- Whether the I-540 project would ever be built;

- Whether DOT would eventually acquire the property in fee simple, and if so, when;

- Whether the Matas would successfully navigate the administrative relief processes and become exempt from the corridor restrictions;

- Whether the General Assembly would rescind the maps; or

- How long any restrictions would remain in place.

Those uncertainties are precisely what made the taking indefinite. The fact that the General Assembly ultimately rescinded the maps twenty years later does not change

what was taken from plaintiffs in 1996: their fundamental rights to improve, develop, and subdivide their property for an unlimited period of time. *See Kirby*, 368 N.C. at 848.

Here, when DOT recorded the 1996 Corridor Map covering 9.93 acres of the Mata Property, it took indefinitely the Mata's right to improve, develop, and subdivide that portion of the property. This taking occurred on 6 August 1996. The accompanying restrictions remained in place until the General Assembly rescinded all corridor maps on 11 July 2016—a period of nearly twenty years. The nearly twenty-year duration is a factual consequence of the indefinite restriction DOT imposed; the eventual rescission of the subject corridor map and the Map Act generally did not transform the indefinite taking of restricted property into a temporary one.

We affirm the trial court's factual finding regarding the applicable dates but clarify that the taking here was indefinite in nature as established by *Kirby* and *Chappell*, notwithstanding that the Map Act restrictions ultimately ended after nearly twenty years due to legislative rescission.

## C. The Correct Measure of Damages

Having established that the Map Act recording effectuated an indefinite taking on 6 August 1996, we turn to the proper measure of damages. To the extent that the Court of Appeals held that the proper measure of damages for the Mata Property was based on valuation for temporary takings, that decision is reversed.

The General Assembly has specified the exclusive measure of damages for partial takings in inverse condemnation proceedings:

> Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

N.C.G.S. § 136-112(1) (2023). In *Chappell*, we reaffirmed that this "fair market value" assessment is the measure of damages that applies to Map Act takings: namely, the amount of the immediate diminution in value on the date of the taking, plus interest at the statutory rate from the date of taking until the date of final judgment. 374 N.C. at 283–84, 289; *accord Kirby*, 368 N.C. at 855–56 ("Through inverse condemnation the owner may recover to the extent of the diminution in his property's value as measured by the difference in the fair market value of the property *immediately before and immediately after* the taking." (cleaned up) (emphasis added) (citing N.C.G.S. § 136-112(1) (2015))). The "immediately" before and after standard calls for a snapshot comparison: the fair market value of the property immediately before the taking versus the fair market value immediately after the taking. Both valuations are anchored to the date of the taking—not calculated across a span of years as with a taking of temporary duration.

This measure of damages applies to Map Act takings, as said in *Kirby*:

> On remand, the trier of fact must determine the value of the loss of these fundamental rights by calculating the

> value of the land before the corridor map was recorded and the value of the land afterward, taking into account all pertinent factors, including the restriction on each plaintiff's fundamental rights, as well as any effect of the reduced *ad valorem* taxes.

368 N.C. at 856.

*Chappell* reinforced this framework, emphasizing that "the relevant determination when calculating just compensation for a taking that involves less than the entire parcel of property starts with the fair market value of the entire property before the taking and the fair market value of what remains after the taking." 374 N.C. at 284. We made it clear that this approach applies uniformly: "This is true whether the taking is an indefinite negative easement, as in the case of Map Act takings, or involves some other taking for public use." *Id.*

In addition, *Kirby* specifically directed that the trier of fact must consider "any effect of the reduced *ad valorem* taxes" when calculating the value of the land after the corridor map was recorded. 368 N.C. at 856. Moreover, as *Chappell* clarified, the way to account for reduced taxes depends on the particular facts of each case. In *Chappell*, "where the evidence was that the property essentially had no fair market value once the 1992 corridor map was recorded," the Court opined that "it was appropriate, following *Kirby*, for the trial court to take into account the effect of the reduced *ad valorem* taxes in the way that it did, and compensate the Chappells for the actual taxes they paid at a time when their property had virtually no fair market value." 374 N.C. at 289.

On remand, then, the trial court should adhere to the measure of damages outlined in *Kirby*, *Chappell*, and N.C.G.S. § 136-112(1) to assess the diminution in fair market value from immediately before to immediately after the taking. The parties may present evidence of that diminution in fair market value consistent with established appraisal methods, such as comparable sales, capitalization of income, and cost, but excluding any evidence of lost business profits, pursuant to established precedent. *E.g.*, *Chappell*, 374 N.C. at 284–85 ("While it speaks to the exclusive measure of damages, the statute does not restrict expert real estate appraisers with regard to the method they use to determine fair market value. . . . NCDOT was entitled to present evidence of the before and after fair market value of the Chappells' property using acceptable methods of appraisal, but only methods using factors that legally can be considered." (internal citations omitted)); *Dep't of Transp. v. M.M. Fowler, Inc.*, 361 N.C. 1, 13 n.5 (2006) ("Methods of appraisal acceptable in determining fair market value include: (1) comparable sales, (2) capitalization of income, and (3) cost. While the comparable sales method is the preferred approach, the next best method is capitalization of income when no comparable sales data are available." (citations omitted)).

Applying this framework to the proceedings below, the appropriate measure of damages should be the fair market value of the Mata Property immediately before and after the taking plus the requisite award of interest. Specifically, on 6 August 1996, the Mata Property had a fair market value unencumbered by Map Act

restrictions (the "before" value). On that same date, immediately after DOT recorded the 1996 Corridor Map, the property had a diminished fair market value reflecting the indefinite restrictions on 9.93 acres (the "after" value). Following precedent from *Kirby* and *Chappell*, the Mata Property's fair market value was established immediately before and after the taking on 6 August 1996.

Furthermore, the reduced tax burden on plaintiffs for the subject property from 1996 to 2016 is a pertinent factor affecting the fair market value of the property immediately after the 1996 recording. A prospective buyer in 1996, evaluating the encumbered property, would consider not only the restrictions but also the tax benefits that accompanied them. Here the record does not yet reflect whether the Mata Property had essentially no fair market value after the 1996 recording or whether it retained some degree of value despite the restrictions. On remand, the trier of fact must determine the appropriate treatment of tax benefits based on the specific valuation evidence presented.

### III. Conclusion

*Kirby* and *Chappell* establish clear, binding precedent that Map Act recordings effectuate indefinite takings of fundamental property rights at the moment corridor maps are recorded. The proper measure of just compensation is the difference between the fair market value of the property immediately before and immediately after that recording. This framework applies regardless of whether the Map Act is later rescinded, or the project is eventually built, or the property is subsequently

acquired in fee simple.

The Court of Appeals' analysis erred by characterizing the taking as "temporary" based on subsequent legislative rescission. We reverse the Court of Appeals' decision and remand this case to that court for further remand to the trial court for further proceedings consistent with this opinion, including calculating just compensation based on the fair market value of the Mata Property immediately before and immediately after the taking on 6 August 1996, considering all pertinent factors including any effect of reduced *ad valorem* taxes.

REVERSED AND REMANDED.

Justice DIETZ concurring.

I agree with the majority that the reasoning of the Court of Appeals cannot be squared with this Court's decisions in *Kirby* and *Chappell*. Our precedent requires trial courts to treat Map Act takings as indefinite, not temporary.

But in fairness to our Court of Appeals colleagues, I think they were grappling with something that we simply ignore. As the majority observes, the Map Act recording was an indefinite taking of Mata's "core property rights to improve, develop, or subdivide" the property. *See* majority *supra* Part I. We often describe property rights in terms of a "bundle of sticks," meaning "a collection of individual rights which, in certain combinations, constitute property." *United States v. Craft*, 535 U.S. 274, 278 (2002). In North Carolina, the "rights to improve, develop, or subdivide" described by the majority are all sticks within that bundle. *See Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 853 (2016).

In other words, through the Map Act recording in this case, the State effectively reached in and took a handful of sticks out of Mata's bundle. Under our precedent in *Kirby* and *Chappell*, Mata is entitled to just compensation for this indefinite taking based on "the difference between the fair market value of the property immediately before and immediately after that recording." *See* majority *supra* Part III.

But many years after that indefinite taking, the State did something unusual:

it changed its mind and gave all those sticks back. After that, the entire bundle of sticks, in fee simple absolute, once again belonged to Mata.

I think the Court of Appeals and the trial court in this case (and the many companion cases) were trying to make sense of the implications of that. They were reckoning with how an "indefinite" Map Act taking interacts with a future direct condemnation proceeding. After all, under this Court's precedent, the State needs to pay just compensation for any taking based on the fair market value of the bundle of sticks the landowner possesses at the time of the taking. *See Town of Midland v. Wayne*, 368 N.C. 55, 63 (2015). After the Map Act rescission and repeal, that bundle of sticks includes all the ones the State gave back.

This Court has decided there is no need to ponder this issue today. I respect that. But I think we should acknowledge that the lower courts were not simply ignoring our precedent—they were trying to wrap their minds around the "double payment" that will result from a strict adherence to *Kirby* and *Chappell*. *See, e.g.*, Order on Hearing Pursuant to G.S. § 136-108, *Mata v. N.C. Dep't of Transp.*, No. 19CVS2633-910, 2023 WL 9785672, at *8 (N.C. Super. June 2, 2023). They were trying to assess whether that was truly what our precedent intended. *See id.* We now know that it was.

Justice BERGER joins in this concurring opinion.